**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MARLON CHARLES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-0053** |
| **SHERIFF ORLEANS PARISH MARLIN GUSMAN & STAFF** | **SECTION "N" (4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

## I. Factual Summary

The plaintiff, Marlon Charles ("Charles"), is presently incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. He filed this *pro se* and *in forma pauperis* complaint against Orleans Parish Criminal Sheriff Marlin Gusman and the prison staff seeking monetary damages for events arising during his confinement in Templeman Jail within the Orleans Parish Prison system ("OPP"), including the alleged untimely evacuation, conditions of confinement, and loss of his personal property as a result of Hurricane Katrina.

Charles alleges that he was arrested on May 26, 2005, and placed in OPP to await trial. Charles alleges that he saw the mayor of New Orleans on television on August 24, 2005, advising everyone to leave because Hurricane Katrina was headed for the city. He complains that, on August 27, 2005, he was placed on lock-down in his cell in Templeman where the windows could not be opened. He alleges that the lights, air conditioner, and water were turned-off. He complains that, as a result of these conditions, he began getting weak and also experienced breathing problems. He indicates that there was no deputy on the tier to assist him.

Charles also states that he began to smell foul odors coming from the bathroom because the toilets could not be flushed. He alleges that some inmates broke windows to get air and ventilate the odors. He complains that he did not eat for three days and was without medication and medical treatment. He also suggests that, on August 28, 2005, (the day before the hurricane hit New Orleans) he lit sheets and blankets in an effort to signal for help, but no one came. Charles also complains that he later found dead skin flakes in his socks because he had to stand in the dirty water at the prison before he was rescued.

He further alleges that, on August 30, 2005, he was removed from the jail by boat and bussed to the Elayn Hunt Correctional Center where he was fed. He was later moved to the Caddo Parish Correctional Center on September 13, 2005.

Charles alleges further that he was forced to leave behind certain personal items when he was ordered to leave OPP, including an identification card, underclothing, white slippers, and one pair of Nike tennis shoes. Charles seeks reimbursement for the lost personal items and additional damages for the mental anguish he suffered as a result of the evacuation experience.

## II. Standard of Review

Title 28 U.S.C. §§ 1915(e)(2), 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss complaints filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under these statutes, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless", a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III. Analysis

### A. Loss of Personal Property During Evacuation

In the instant case, Charles seeks to hold the Sheriff liable as a result of the loss of his personal property during his evacuation from the prison. He seeks reimbursement for the loss of his

identification card, underclothing, white slippers and Nike tennis shoes. His allegations, however, fail to state a federal claim.

The United States Supreme Court has held that when a deprivation of this sort by a state actor is unintentional, the Due Process Clause is not involved so long as there is a meaningful post-deprivation state remedy. *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986); *see also Arnaud v. Odom*, 870 F.2d 304, 308 (5th Cir.), *cert. denied,* 493 U.S. 855 (1989). The Supreme Court reasoned in *Parratt* that, where a deprivation is caused by a random and unauthorized act of an official, rather than by standard state procedure, the state cannot predict when such a loss will occur. The Court further observed:

> It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under 'color of law,' is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.

*Parratt*, 451 U.S. at 541.

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the issue facing the Supreme Court was "whether [its] decision in *Parratt v. Taylor* should extend . . . to intentional deprivations of property by state employees acting under color of state law." *Hudson*, 468 U.S. at 531 (footnote omitted). The Supreme Court answered this question in the affirmative, reasoning as follows:

> The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, pre-deprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the 'practicability' of affording pre-deprivation process is concerned. The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct. Arguably, intentional acts are even more difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signaling his intent.

*Hudson*, 468 U.S. at 533.

The unfortunate loss of Charles's belongings during the emergency evacuation, whether random or intentional, is similar to the loss contemplated in *Parratt* and *Hudson*. *See Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995); *see also Copsey v. Swearingen*, 36 F.3d 1336, 1342 (5th Cir. 1994); *Augustine v. Doe*, 740 F.2d 322, 328 (5th Cir. 1984). The Fifth Circuit has recognized that Louisiana law provides adequate remedies for negligent or intentional deprivations of property. *Alexander*, 52 F.3d at 557 n.14 (citing *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984)). In this case, Louisiana's general tort law provisions, found at La. Civ. Code Art. 2315 *et seq*., provide an adequate remedy for any property loss incurred by Charles.

The *Parratt/Hudson* doctrine teaches that, because "States could not predict and therefore could not safeguard against random and unauthorized deprivations through predeprivation process, adequate post deprivation remedies were sufficient process." *Alexander*, 62 F.3d at 709 n.13. "[T]he intentional wrongs of individual state employees are no more predictable (and arguably are <u>less</u> predictable) than negligent actions." *Augustine v. Doe*, 740 F.2d 322, 328 (5th Cir. 1984) (emphasis in original).

Charles's § 1983 claims against Sheriff Gusman are based on unpredictable events and are foreclosed in federal court by the *Parratt/Hudson* doctrine. "The burden is on the complainant to show that the [state] remedy is not adequate." *Marshall*, 741 F.2d at 764. Charles has made no so such showing. Charles's remedy against the defendant lies in state court and the instant action is legally frivolous.

**B. Conditions of Confinement During the Hurricane**

Under a broad reading, Charles alleges that Sheriff Gusman should be held responsible for the evacuation process and the unfortunate conditions in the prison caused by the hurricane. He complains that he was not fed for three days and was otherwise temporarily exposed to difficult circumstances in the facility with no air until the day after the storm hit. He alleges that, because Sheriff Gusman is in charge of the jail, he is liable for the conditions and circumstances of his confinement during the hurricane. Charles's claims are, however, frivolous.

Challenges to the constitutionality of conditions of pre-trial confinement are evaluated under the Fourteenth Amendment Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520 (1979). Under the Due Process Clause "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Hubbard v. Taylor*, 399 F.3d 150, 158 (3rd Cir. 2005) (citing *Bell*, 441 U.S. at 535). To decide whether a pretrial detainee's constitutional rights have been violated, the court must determine whether the "disability is imposed for punishment or . . . [for] some other legitimate governmental purpose." *Bell*, 441 U.S. at 539. If a particular condition or restriction of pre-trial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. *Id.*

Moreover, "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* at 538 (citation omitted). A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmates complaint and failed to remedy it, or created or permitted

a policy that harmed the inmate, or acted with gross negligence in managing subordinates. *See, e.g., Williams v. Smith*, 781 F.2d 319, 323 (2nd Cir. 1986).

Charles has not alleged that any of the events or conditions complained of were done or imposed upon him as punishment for the crime of which he stood accused. He recognizes in his petition that the conditions to which he was exposed were instead a direct result of Hurricane Katrina.

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983. However, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

He also does not allege that Sheriff Gusman, the only named defendant, was personally involved in the acts about which he complains or in the evacuation process itself. He has not alleged that Sheriff Gusman was personally involved in the denial of his food or unavailability of medical personnel during the hurricane or during the evacuation. Charles's claims against the Sheriff are in this regard based on a meritless legal theory.

Furthermore, to the extent Charles claims that Sheriff Gusman acted negligently in responding to or preparing for this emergency situation, his claims are still frivolous. Acts of negligence do not implicate the Due Process Clause such to give rise to a claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Davidson v. Cannon*, 474 U.S. 344 (1986). Allegations amounting to negligence cannot support a § 1983 claim for violation of the Eighth Amendment. *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence deprivation of religious rights or gross negligence in permitting a gas leak to occur); *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligent failure to protect); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); *Doe v. Taylor Independent School District*, 975 F.2d 137, 142 (5th Cir. 1992), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

Instead, an official must act with deliberate indifference to be liable under § 1983. An official is deliberately indifferent to an inmate's medical needs and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). In this case, Charles has made no such showing of an intentional indifference by Sheriff Gusman.

In addition, Charles has also failed to show that the temporary conditions caused by the hurricane violated his constitutional rights. In order to prove that the conditions of his confinement violated the Fourteenth Amendment, an inmate must show, "that, from an objective standpoint, [they] denied him the minimal measure of necessities required for civilized living". *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his or her basic human needs, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs. *Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996).

Courts have repeatedly held that the constitution does not mandate that prisons provide comfortable surroundings or commodious conditions. *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998). For these reasons, a short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation. *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992); *Robinson v. Illinois State Corr. Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)).

Charles has not alleged that Sheriff Gusman acted with deliberate indifference to his safety, any specific medical need, or to the sanitation of the prison during the unprecedented events and temporary conditions resulting from Hurricane Katrina. Without a showing of a deliberate indifference, Charles's claims against Sheriff Gusman should be dismissed as frivolous.

**C. Claim for Emotional Damages and Mental Anguish**

Charles also alleges that he is entitled to monetary relief for his mental anguish caused by the events surrounding Hurricane Katrina. He alleges that he had dreams of drowning and distress from the dry skin on his feet as a result of standing in water waiting for rescue boats.

Under Title 42 U.S.C. § 1997e(e), an inmate cannot recover for "mental and emotional injury suffered while in custody without a prior showing of physical injury." The United States Fifth Circuit, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but need not be significant. *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003) (quoting *Harper*, 174 F.3d at 719 (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (where the Fifth Circuit first set forth its § 1997e(e) definition of physical injury))). His only alleged physical symptom was that skin flakes were found when he removed his socks after his evacuation. Such a *de minimis* consequence is not sufficient to meet the physical injury requirement of § 1997e(e). *See Alexander v. Tippah County*, 351 F.3d 626, 631 (5th Cir. 2003) (vomiting and nausea was a *de minimis* injury insufficient for recovery under § 1997e(e)).

**D. Claims against The Prison Staff**

Charles also names the prison staff as a defendant. He does not, however, identify a particular staff member who could be held liable under § 1983 for the conditions he endured as a result of the storm.

Section 1983 imposes liability on any "person" who violates someone's constitutional rights "under color of law." 42 U.S.C. § 1983; *see Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Charles has not named any person who can be held accountable under § 1983.

In addition, the prison staff is not a definable entity with the capacity to sue or be sued as required by Rule 17(b) of the Federal Rules of Civil Procedure and state law. An entity's capacity to be sued must be determined by reference to the law of the state in which the district court sits. Fed. R. Civ. P. 17(b). Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24.

The Louisiana Supreme Court in *Roberts v. Sewerage and Water Board of New Orleans*, 634 So. 2d 341 (La. 1994), set forth a framework within which to determine an entity's juridical status. The Court in *Roberts* stated:

> [t]he important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. 1 Sands & Libonati, § 2.18 and authorities cited therein, §§ 2.19, 2.20. Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.

*Roberts*, 634 So. 2d at 346-47. In concluding that the Sewerage and Water Board was capable of being sued, the *Roberts* court focused its analysis on the independent management, financing, and operations of the Board. *See id.* at 352.

By contrast, in *City Council of Lafayette v. Bowen*, 649 So. 2d 611, 616 (La. App. 3rd Cir. 1994), *writ denied*, 650 So. 2d 244 (La. 1995), the Louisiana Third Circuit Court of Appeal held that under the *Roberts* analysis, the City Council of Lafayette had no capacity to sue or be sued. In so holding, the court expressly found "no authority, constitutional, statutory, or via home rule charter that authorizes the Lafayette City Council to institute of its own motion, a lawsuit." *Id*. at 613.

Under the *Roberts* framework, the "prison staff" is not an entity legally empowered to do anything independently of the parish officials or the parish sheriff. *See Roberts*, 634 So. 2d at 347. Accordingly, Charles's claims against the prison staff should be dismissed as frivolous and for failure to state a claim for which relief can be granted.

**IV. Recommendation**

It is therefore **RECOMMENDED** that Marlon Charles's § 1983 claims against Sheriff Gusman and the prison staff be **DISMISSED WITH PREJUDICE** as frivolous pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 25th day of April, 2006.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**